Jarret Bros. Co., Inc.
vs.
The Carroll Worsted Mills, Inc.

Eq. No. 12069.

July 27, 1934.

BAKER, P. J. Heard on petition of the Industrial Trust Company that an ex parte order entered May 20, 1933, authorizing the receiver of the respondent corporation to prosecute an action at law against said bank. be revoked and rescinded and that said receiver be ordered to discontinue said action.

In this case it appears that the respondent corporation on February 13, 1933, executed a renewal note for $11,500 to the Industrial Trust Company. This note was endorsed and matured May 15th next. On April 3, 1933, a temporary receiver of said respondent corporation was appointed and qualified, and on April 18th the same person was appointed and qualified, as permanent receiver.

On said April 3rd, the respondent corporation had on deposit with the Industrial Trust Company a checking account amounting to $6,862.96. On the date of his appointment, the temporary receiver and his attorney went to the Industrial Trust Company and interviewed one of its officers and demanded the turning over of the checking account of the respondent corporation. The bank officer replied in substance that there was at that time no checking account because it had been credited on the note of the respondent corporation which the bank was holding. On April 21, 1933, the Industrial Trust Company filed a claim with the receiver against the respondent corporation in the sum of $4,593, being the balance due upon said note in question. Some conversation between the receiver's attorney and the officers of the bank followed in regard to the disposition of said checking account. When the note matured May 15, 1933, the endorser was duly charged. May 17th and 18th there were further conversations between the interested parties and on May 20th, the receiver obtained from the Court the ex parte order involved in this proceeding and began suit against the bank to recover the amount of the checking account. On June 7, 1933, the receiver filed his report on the allowing and disallowing of claims as required by the provisions of the decree under which he was appointed. The claim of the Industrial Trust Company was allowed by the receiver without prejudice to his right to recover from said bank the full amount of said checking account. On June 14, 1933, the report of the receiver on allowed and disallowed claims was approved by the Court. No notice was

sent to the Industrial Trust Company as to this hearing because its claim had been allowed.

The bank first contends in support of its petition that the law covering the situation presented herein is so well settled in its favor that the suit by the receiver is an improvident act.

There can be little or no question regarding the duty of the receiver to reduce to possession all the assets of the insolvent respondent corporation and, if necessary, to bring suit to accomplish this result.

An examination of the cases in this state bearing upon the point involved herein reveals that they are practically all actions at law and are brought by the plaintiff in his representative capacity as receiver, assignee, executor, administrator, or the like.

The provisions of the decree under which the receiver was appointed authorized him to collect the assets of the respondent corporation and to bring suit for them if necessary. Futher, he is given the same general powers under the provisions of Sec. 58, Chap. 248, Gen. Laws 1923.

In the opinion of the Court, it is very doubtful if the receiver needed the specific authority given him by the ex parte order of May 20, 1933, to which the bank is now objecting. Ordinarily a defendant is not in a position to select the forum in which it is sued. This usually rests with the plaintiff. It is, of course, true that in the matter now before the Court, the Industrial Trust Company is in a dual position, being the defendant in the suit brought by the receiver and also being a general creditor with a claim against the insolvent corpora-, tion.

In *Tillinghast, Receiver,* vs. *Champlin,* 4 R. I. 173, the Court held that a defendant was not in a position to object that a receiver had brought a suit without first obtaining special permission.

An examination of the authorities brought to the Court's attention relating to the bank's right of set-off in this jurisdiction leads the Court to the opinion that the question is not so clearly and definitely determined that the act of the receiver herein in bringing action against the bank is improvident. The receiver is representing all the creditors of the respondent corporation and it is his duty to use all reasonable means to increase the assets of said corporation in his hands. If the set-off herein is allowed as claimed by the bank, the latter is preferred to that extent over the creditors. Further, the amount involved is substantial, being almost $7,000.

The matter is not now before the Court on the merits of the dispute between the receiver and the bank, but on the issue as to whether or not the receiver should be allowed to proceed with the action at law which he has started against the bank. For that reason it is, perhaps, not necessary to analyze at this time all the authorities in detail. It seems reasonably clear that the bank's contention that the general weight of authorities permits the right of set-off is sound.

Vol. 7, C. J. 656;

25 L. R. A. (N. S.) 393;

Michie on Banks & Banking (Per. Ed.) Vol. 5, p. 243.

The receiver is depending chiefly on the decision of the Court in the case of *Ellis, Assignee,* vs. *First National Bank of Woonsocket,* 22 R. I. 565. In that case the Court held that the bank did not have the right to set off a deposit of a depositor who had made an assignment for the benefit of creditors against an unmatured obligation of said depositor. The case has been cited as showing that Rhode Island is with the minority jurisdictions in not permitting such a set-off.

*Wright* vs. *Seaboard Steel & Manganese Corp.*, 272 Fed. 807; 43 A. L. R. (1926) Anno. 1325, 1330.

It appears to the Court that there is no decision in this State directly on all fours with the case at bar. The bank contends that its position in claiming the right to set-off is supported by several cases, viz:

*Clarke, Receiver,* vs. *Hawkins,* 5 R. I. 219;

*Nightingale* vs. *Chafee,* 11 R. I. 609;

*Hall* vs. *Greene,* 24 R. I. 286;

*Troup* vs. *Mechanics Nat'l Bank,* 24 R. I. 377;

*Clarke* vs. *Lincoln Trust Co.,* 50 R. I. 493.

In the case of Clarke, Receiver, supra, where a set-off was allowed, it would appear that the obligation had matured.

In Nightingale, supra, the Court held that an assignee for the benefit of creditors lost his right to recover the deposit if said deposit was not transferred to his name as assignee or if the suit was not brought before the note held by the bank matured. The decision of the Court appears to rest upon a construction of the statute relating to set-off and holds that the right of set-off is determined by the state of the claim at the time of the commencement of the action.

The last three cases above mentioned in support of. the bank's position relate to the question of the setting off of deposits where the estates of deceased insolvents are involved. In these cases the Court has held that the general principles of an equitable set-off govern the situation and that the cases do not come under the statute relating to set-off at all. These cases would appear to be limited to estates of deceased insolvents and hold that by operation of law rights are fixed as of the time of death. In these cases the notes in question apparently had not matured at the time of the death of the person involved therein. Further, in these cases there is no reference to the Ellis decision, supra. There is in the Troup case, supra, certain rather broad language by the way of dicta which might be construed as applying the general rule of equitable set-off to the bankrupt estates of living persons. This is the general position which the bank takes in the case at bar.

In the present proceeding the note of the respondent corporation had not matured at the time of the appointment of the temporary and permanent receiver but had matured a few days before the action in question was begun. On the merits of the proceeding the question . may turn on whether the decision in the Ellis case, supra, is to govern, whether the Court will follow the general weight of authority in allowing a set-off, or whether an equitable set-off analogous to that allowed in estates of deceased insolvents will be permitted. Further, it is possible that a construction of the decision of the Court in the case of *Nightingale* vs. *Chafee, supra,* may determine the situation.

In the case at bar there is no question but that the action was started after the note matured but the receiver argues that he is in a different position from an assignee and that he has certain equities and certain liens in regard to the assets of the corporation of which he is receiver from the time of his appointment. The issue of priorities may possibly be involved.

Taking into consideration, therefore, the state of the authorities in this jurisdiction and the amount involved herein, the Court is of the opinion that the receiver has an issue which for the benefit of all the creditors of the respondent corporation he should be allowed to try; that the question involved is reasonably open and that

the proceeding started by him against the bank was not improvident.

The bank next contends in support of its petition that it is inequitable that the receiver's suit against it be maintained because, in substance, the receiver has waived whatever rights he might have; that he is estopped by his actions in connection with the bank's claim against the respondent corporation, and that the question of set-off is, as a matter of fact, res adjudicata and that there is nothing to litigate. The bank urges that by allowing its claim the receiver has in substance recognized the set-off.

After giving this matter careful consideration, it does seem to the Court that this is the true situation. The receiver had no control over the form in which the bank was pressing its claim against the respondent corporation. Neither was the receiver under any duty or obligation to the bank to suggest that the claim be filed for any particular amount or in any particular manner. The bank might have filed a claim for the whole amount of the note and then, perhaps, claimed a lien on the amount of the checking account involved. The bank did not see fit to do this but filed a claim for the balance of the note after crediting on the note the amount of the checking account. This claim, as filed, the receiver allowed. The parties were dealing more or less at arm's length with each other and the evidence shows that each so understood the matter.

From an examination of the testimony presented, it appears reasonably plain to the Court that the receiver never had any intention of waiving any rights.

The bank argues that possibly its rights against the endorser on the note may in some way be prejudiced by the action of the receiver. No authority has been cited for this proposition and it is difficult to see why the bank cannot pursue the endorser for the full amount of the note in case it should later be determined that no right of set-off properly existed. Further, while it is true that under the strict provisions of the decree relating to the filing of claims the time has gone by for proving claims against the respondent corporation, nevertheless the Court frequently permits claims to be amended or filed out of time, particularly where there has been no distribution of the assets of the estate. It is reasonable to suppose that in this case, if the bank desired to file a new claim or an amended claim or a claim in the alternative, permission could be obtained for so doing from the Court.

In support of its position herein the bank has called the Court's attention to the case of In re Benallack, 259 Mich. 417. In that case the bank filed a claim in the receivership proceeding as a secured creditor, contending that it had a right to set off a deposit, and the Court held that the receiver could file a cross-petition to recover the deposit in the same receivership proceeding.

The case does not appear to go so far as to hold that this was the only remedy which the receiver had to recover the deposit; nor does it hold that the receiver might not have proceeded against the bank in an independent case. Possibly there are concurrent remedies whereby a receiver might claim a deposit either in an independent suit or by some proceeding in the receivership case itself. The general practice in this jurisdiction, however, from an examination of the authorities, would appear to have been the bringing of an independent suit rather than a proceeding in the receivership case itself.

Undoubtedly the receiver, unless he has so conducted himself as to be estopped, should have the right to try out in some forum the question of the

validity of the right of set-off which the bank is claiming.

The receiver herein is also urging upon the Court that on a trial he will have certain evidence which will establish equities in his favor.

It seems to the Court that most of the matters which the bank is now urging in support of its petition can equally well be set up in defence to the suit itself. It is well recognized that pleas of an equitable nature may be filed in a law action and if the bank claims that the matter of its right of set-off is now res adjudicata because of the actions of the receiver and the way in which he has treated the bank's claim in the receivership proceeding, then it would seem that a plea of res adjudicata in some form could be filed. All the questions of law which the bank has raised on its petition at this hearing can equally well be raised by way of defence to the suit brought by the receiver.

After giving the whole matter consideration, the Court is of the opinion that it is not inequitable for the receiver to be allowed to maintain the action at law and that he has not waived his rights so to do; that he is not estopped and that the question of set-off is not res adjudicata.

The Court, therefore, will deny and dismiss the petition of the Industrial Trust Company that the order permitting the receiver to sue the bank be revoked and rescinded.

For complainant: Hugo A. Jarret; Curran, Hart, Gainer & Carr.

For respondent: Walling & Walling; Hinckley, Allen, Tillinghast & Wheeler.

For Industrial Trust Company: Huddy & Moulton.